[Cite as *In re J.J.*, 2020-Ohio-1020.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: J.J.. & A.J. | : | JUDGES: |
|  | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
|  | : | Hon. Earle E. Wise, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case Nos.    2019CA00167 : |
|  |  | 2019CA00168 |
|  | : |  |
|  | : |  |
|  | : | <u>OPINION</u> |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil appeal from the Stark County Court of Common Pleas, Family Court Division, Case Nos. 2018JCV00724 & 2018JCV00725 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | March 16, 2020 |

APPEARANCES:

For Plaintiff-Appellee

BRANDON J. WALTENBAUGH
Stark County JFS
402 2nd St. S.E.
Canton, OH 44702

For Defendant-Appellant

DEAN L. GRASE
700 Courtyard Centre
116 Cleveland Avenue NW
Canton, OH 44702

*Gwin, .J.*

{¶1}     Appellant-mother ["Mother"] appeals the October 9, 2019 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights with respect to her minor children and granted permanent custody of the children to appellee, Stark County Jobs and Family Services ["SCJFS"].

*Facts and Procedural History*

{¶2}     On July 12, 2018, SCJFS filed a complaint alleging the dependency and/or neglect of J.J. (b. 06.13.2011) and A.J. (b. 07.01.2016)[1].

{¶3}     On July 13, 2018, the trial court held an emergency shelter care hearing and found that probable cause existed for the involvement of SCJFS, continued residence of the children in the home would be contrary to their best interests and welfare, and SCJFS made reasonable efforts to prevent the need for placement and/or to make it possible for the children to return home or remain in the home.  The trial court also placed the children into the emergency temporary custody of SCJFS.

{¶4}     On August 28, 2018, the trial court found the children to be dependent and placed them into the temporary custody of SCJFS.  The trial court also approved and adopted the case plan and found that SCJFS had made reasonable efforts to prevent the need for the continued removal of the children from the home.

{¶5}     On January 9, 2019, the trial court reviewed the case.  The trial court approved and adopted the case plan, found that SCJFS had made reasonable efforts to finalize the permanency planning in effect, and ordered status quo.

---

[1] A third child, A.K. (b. 03.27.2010) was originally included in the complaint; however, Mother stipulated to permanent custody of this child.  (T. Aug. 6, 2019 at 3; 18-19; T. Oct 7, 2019 at 3-4).

{¶6}   On May 31, 2019, SCJFS filed motions seeking permanent custody of the children.

{¶7}   On June 7, 2019, the trial court again reviewed the case.  The trial court approved and adopted the case plan, found that SCJFS had made reasonable efforts to finalize the permanency planning in effect, and ordered status quo.  At this hearing, the trial court found that there were no compelling reasons to preclude a request for permanent custody to SCJFS.

{¶8}   On August 6, 2019, the trial court heard evidence on the motions seeking permanent custody of the children.  At the hearing, Mother stipulated to SCJFS's motions requesting permanent custody of her children.  The trial court underwent a dialogue with Mother about her rights associated with the hearing and the ramifications of stipulating to permanent custody.  (T. Aug. 6, 2019 at 3-9).  Mother signed a form confirming her desire to waive those rights and stipulate to permanent custody.  (Id. at 3-9).  Due to the stipulations and the subsequent testimony, the trial court granted permanent custody of the children to SCJFS.  (T. Aug. 6, 2019 at 18-19).

{¶9}   On September 27, 2019, Mother filed motions requesting to withdraw her prior stipulations to permanent custody concerning A.J. and J.J. Those motions were set for a hearing on October 7, 2019.

{¶10}  On September 30, 2019, the Guardian ad Litem for the children submitted a report recommending that the children be placed into the permanent custody of SCJFS.

{¶11}  On October 7, 2019, the trial court heard evidence on the motions seeking permanent custody of the children and on Mother's motions to withdraw her prior stipulations.  The trial court granted Mother's motions to withdraw her prior stipulations

and proceeded with evidence on the permanent custody motions.  .

**Permanent Custody Hearing, October 7, 2019.**

{¶12}  Caseworker Kimberly Gabel testified for SCJFS.  Ms. Gabel testified that Mother had not completed her case plan and had not significantly reduced the risk she posed to her children.  Specifically, Ms. Gabel testified that Mother's case plan required her to complete a parenting assessment, maintain sobriety, engage in substance abuse services, engage in mental health services, and obtain appropriate housing and employment.

{¶13}  Caseworker Gabel testified that the night before the children were taken into temporary custody of SCJFS, the children had witnessed a shooting in the home of Mother's drug-dealer paramour.  (T. Oct. 7, 2019 at 16-17).

{¶14}  Caseworker Gabel testified that Mother completed a parenting assessment and was diagnosed with alcohol use disorder, cannabis use disorder, simulant use disorder, opiate use disorder, major depressive disorder with recurrent psychosis, generalized anxiety disorder, rule-out bipolar personality disorder, dependent personality disorder, and borderline personality disorder.  Ms. Gabel testified that, in addition to the previous services, the parenting evaluation recommended for Mother to complete a psychiatric evaluation, participate in anger management services, and obtain four months of sobriety prior to initiating parenting classes.  Caseworker Gabel testified that Mother had tested positive for opiates, methamphetamine, cocaine, and/or barbiturates at least 25 times throughout the case.  In fact, Ms. Gabel testified that Mother was positive for barbiturates, opiates, and marijuana on the day of the trial.  Caseworker Gabel testified that she "almost begged" Mother to engage in substance abuse services,

to no avail.  Ms. Gabel testified that Mother did not complete a psychiatric evaluation and had been inconsistent with her mental health treatment.  Ms. Gabel testified that Mother did not participate in anger management services.  Caseworker Gabel testified that she was not aware of Mother's employment status and was unable to verify that Mother had appropriate housing.  On cross-examination, Ms. Gabel testified that Mother had consistently stated that she was not doing any residential services.

{¶15}  Mother testified on her own behalf.  Mother admitted that she quit intensive outpatient treatment for her drug use.  Mother further acknowledged she did not have independent housing.  Mother testified she had not completed a psychiatric evaluation and was not taking medication to address her mental health issues.  Mother admitted she did not have stable employment.

{¶16}  Mother testified that she had an appointment for Section 8 housing the following day, after having been on the waiting list for 4 years.  (T. Oct. 7, 2019 at 24). In the Judgment Entry filed August 18, 2018, the Magistrate noted that, "Mother has reached out to Phoenix Rising on her own to set up counseling."  *See,* Docket Entry No. 38.  The Magistrate further noted that, "mother has been consistent with visitation and does well."

{¶17}  At trial, Mother further testified that she is on the waiting list for in-patient drug treatment.  Mother testified that she attempted intensive outpatient treatment, but transportation became an issue for her. The Case Plan Review Packet, filed Jan. 9, 2019, noted that the assessment by Northeast Ohio Behavioral Health recognized Mother may have difficulty mainlining sobriety as an outpatient, and may need residential treatment.  Docket No. 46 at 3.

{¶18} Mother was previously employed as a landscaper with her stepfather and at a factory in Cuyahoga Falls. Mother stated that she passed drug tests at her employment, so may have had some short-term sobriety. The Case Plan Review Packet, filed Jan. 9, 2019 indicated that Mother had been employed as a waitress and had provided screenshot verifying her pay to SCJFS. *Case Plan Review Packet,* filed Jan. 9 2019, at 5. Docket Entry No. 46.

{¶19} Mother testified that she believed she could address the case plan concerns if the trial court granted a six-month extension of temporary custody.

{¶20} The court heard testimony concerning the best interest of the children. Ms. Gabel testified that one of the children is in counseling. Ms. Gabel testified that the children were placed together in a foster home. Ms. Gabel testified that the foster parents were interested in adoption. The children are bonded with each other and with the foster family. Caseworker Gabel testified that S.T., Mother's stepfather recently came forward indicating a desire for placement of the children. Ms. Gabel testified that SCJFS had not yet completed a formal home study for S.T., and that he has concerning criminal and children services history. Ms. Gabel testified that S.T. had initiated the process of becoming a foster parent. Ms. Gabel testified that S.T. would be considered for adoption if he became a foster parent and permanent custody was granted.

{¶21} Ms. Gabel testified that visits between Mother and the children were a "rollercoaster ride of emotion" due to Mother's cycling from crying to falling asleep to being combative and angry. On cross-examination, Ms. Gabel testified that the children are bonded with their Mother. Despite the bond, Ms. Gabel testified that she believed permanent custody of the children was in their best interests.

{¶22} S.T. testified for Mother. S.T. testified that he is Mother's stepfather. S.T. testified that Appellant's mother was a drug addict. S.T. testified that he had past involvement with children services. S.T. testified that he was about to start the process of becoming a foster parent. S.T. testified that he was going to pursue adopting the children. S.T. testified that he was "disappointed" in Mother for the events that led to the removal of the children from her home.

{¶23} The Guardian ad Litem for the children, made a statement. She testified that permanent custody of the children was in their best interests.

{¶24} The trial court took the matter under advisement.

{¶25} On October 9, 2019, the trial court issued its findings of fact granting permanent custody of the children to SCJFS and terminating Mother's parental rights. Specifically, the trial court found that, despite reasonable efforts by SCJFS, the children could not be placed with Mother within a reasonable amount of time, the children had been in the temporary custody of SCJFS for 12 or more months in a consecutive 22-month period, and permanent custody was in the children's best interests.

*Assignment of Error*

{¶26} Mother raises one Assignment of Error:

{¶27} "I. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT ADEQUATE GROUNDS EXISTED FOR A GRANT OF PERMANENT CUSTODY AND THEREFORE SUCH DECISION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶28} At the outset, we note that SCJFS concedes that the trial court was incorrect in finding that the children had been in the continuous custody of SCJFS for 12 of 22 months (Appellant's Brief at 12). However, in the case at bar, the trial court provided additional finding pursuant to R.C. 2151.414(B)(1) and R.C. 2151.414(E) upon which to base a grant of permanent custody.

{¶29} Mother argues that the Trial Court abused its discretion in finding that there was Clear and Convincing Evidence that these children could not or should not be placed with the parent within a reasonable amount of time. When the Motion for Permanent Custody was filed, Mother still had an approximately fifteen-month window in which to achieve sobriety. Such finding that this could not be achieved in the available time period was contrary to the manifest weight of the evidence and therefore the trial court's granting of Permanent Custody to the SCJFS should be reversed. (Mother's Brief at 16-17).

**BURDEN OF PROOF.**

{¶30} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody, and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.

{¶31}  An award of permanent custody must be based upon clear and convincing evidence.  R.C. 2151.414(B)(1).  The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal."  *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

**STANDARD OF APPELLATE REVIEW.**

{¶32}  The Ohio Supreme Court has delineated our standard of review as follows,

Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.  See *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14.

{¶33}  *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954).  A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established."  *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

{¶34}  In *Cross*, the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts.  The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself.  Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value.  *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.*  See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478.  (Emphasis added).

### Requirements for Permanent Custody Awards

{¶35}  R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody.  R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶36}  Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶37}  Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody.  In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

1**. Parental Placement within a Reasonable Time–R.C. 2151.414(B)(1)(a).**

{¶38}  The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents.  R.C. 2151 .414(E).  The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent.  A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors.  The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time.  *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher*, 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

{¶39}  R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents.  Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the

Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

\* \* \*

(16) Any other factor the court considers relevant.

{¶40} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

{¶41} "Reasonable efforts" have been described as the state's efforts to resolve a threat to a child's health or safety before removing the child from the home or permitting the child to return home, which follow an intervention to protect a child from abuse or neglect. *See In re C.F.*, 113 Ohio St. 3d 73, 862 N.E. 2d 816, 2007- Ohio-1104, ¶ 28, *citing* Will L. Crossley, *Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation* (2003), 12 B.U. Pub.Int.L.J. 259, 260. These efforts are required because of the fundamental nature of the right to parent one's children. *In re C.F.,* ¶ 21.

{¶42} The Ohio Supreme Court has held that the trial court is not obligated by R.C. 2151.419 to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing. *See In re C.F.,* 113 Ohio St.3d 73, 2007–Ohio– 104, ¶ 41; ¶ 43; See, *also*, R.C. 2151.419. The trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of

which occur prior to a decision transferring permanent custody to the state." *In re C.F.* at ¶ 41.

**{¶43}** A parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification. The ultimate question under R.C. 2151.414(A)(1) is whether the parent has substantially remedied the conditions that caused the child's removal. *In re Shchigelski*, 11th Dist. No. 99–G–2241, 2000 WL 1568388 (Oct. 20, 2000); *In re McKenzie,* 9th Dist. No. 95CA0015, 1995 WL 608285 (Oct. 18, 1995). A parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed-the case plan is simply a means to a goal, but not the goal itself. Hence, the courts have held that the successful completion of case plan requirements does not preclude a grant of permanent custody to a social services agency. *In re J.L.,* 8th Dist. No. 84368, 2004–Ohio–6024, ¶20; *In re Mraz*, 12th Dist. Nos. CA2002–05–011, CA2002–07–014, 2002–Ohio–7278.

**{¶44}** The trial court had the discretion, consistent with the best interests of the children, to determine whether to grant Mother a six-month extension of temporary custody. See R.C. 2151.415(D) (1*). See, also, In re T.W., C.W., F.W., & R.W.*, 9th Dist. No. 21594, 2003–Ohio–7185, ¶ 6; *In re E.T., C.D., & Cr.D.*, 9th Dist. Summit No. 227290, 2005-Ohio-6087, ¶9. An abuse of discretion can be found where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; In *re Guardianship of S .H*. 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No.2006–CA–41, 2006–Ohio–5823, ¶54.

{¶45} R.C. 2151.415(D)(1) provides that,

The court may extend the temporary custody order of the child for a period of up to six months, if it determines at the hearing, by clear and convincing evidence, that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension.

* * *

{¶46} In the case at bar, the record reflects that Mother tested positive for drugs 26 times during the course of the proceedings, including the day of the permanent custody hearing. Mother did not accomplish more than a minuscule compliance with only a few of the case plan requirements. In other words, Mother did not demonstrate "significant progress" on the case plan, nor does the record reflect that the children could be reunited with Mother within the period of the extension. Providing more services to an individual who has not availed herself of the services already provided or made available to her is not required. We find no abuse of discretion in not granting Mother an additional 6-month extension of temporary custody.

{¶47} As set forth above, the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the children, and the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses. Nothing in the record of this case suggests that Mother's behavior would change if given more time to work on her case plan.

**{¶48}** The evidence demonstrated very little success Mother had made on the case plan. On that point, the evidence demonstrates that any improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that, regardless of Mother's compliance with aspects of his case plan, she was still not able to be a successful parent to these children. It appears that Mother cannot raise her children without the structure and the support of SCJFS. Without the involvement of numerous outside resources, Mother simply is unable to maintain a safe and structured environment in the home and to remain drug free.

**{¶49}** In the case of *In re: Summerfield,* 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

**{¶50}** Based upon the foregoing, as well as the entire record in this case, the Court properly found the children could not or should not be returned to Mother within a reasonable time. Despite offering numerous services, Mother was unable to mitigate the concerns that led to the children's removal.

***The Best Interest of the Child.***

**{¶51}** Mother set forth no assignment of error, or argument concerning the "best interest of the children."

**{¶52}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any

other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶53} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424(8th Dist.1994). A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent. The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

{¶54} The trial court made findings of fact regarding J.J. and A.J.'s best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), *quoting In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424(8th Dist. 1994).

{¶55} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence, upon which the fact finder could base its judgment. *Cross Truck*

*v. Jeffries,* 5th Dist. Stark No. CA-5758, 1981 WL 6321(Feb. 10, 1982). "Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St. 3d 71, 523 N.E.2d 846(1988).

{¶56}   In the present case, the trial court's decision indicates it considered the best interest factors.  Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in J.J. and A.J.'s best interest.  The trial court concluded the child's need for legally secure placement could not be achieved without awarding permanent custody to SCJFS.

*Conclusion*

{¶57}   For these reasons, we find that the trial court's determination that Appellant-Mother had failed to remedy the issues that caused the initial removal and therefore the children could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶58}   We further find that the trial court's decision that permanent custody to SCJFS was in the child's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶59} Because the evidence in the record supports the trial court's judgment, we overrule Appellant-Mother's sole assignments of error, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division.

By Gwin, J.,

Hoffman, P.J., and

Wise, Earle, J., concur